# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,** § | |
| § | |
| **V.** § | **A-15-CV-165-AWA** |
| § | |
| **JANOS FARKAS.** § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the above-entitled cause of action. The parties appeared for a bench trial and the Court heard testimony and evidence on December 12, 2016. Pursuant to the Court's Order the parties filed post-trial briefing. The last of all the Court-ordered briefing was received January 30, 2016. Having considered the evidence and testimony and post-trial briefing, the Court enters the following Memorandum Opinion and Order.

## I. FINDINGS OF FACT[1]

This case arises from a suit to foreclose on real property owned by Janos Farkas. Wells Fargo Bank, N.A. (Wells Fargo) brought suit for foreclosure alleging that Farkas had defaulted on a 2007 Home Equity Loan. Farkas argued that the lien on the property was invalid and unenforceable due to deficiencies in the lien documents. Shortly before the trial was scheduled, Wells Fargo dismissed its foreclosure claim as the loan was no longer in default. However, Farkas, in his answer to Wells Fargo's third amended complaint, added a counterclaim for quiet title based on the allegedly invalid lien. Specifically, Farkas claimed that the lien documents—the Wells Fargo Home Equity Account Agreement and Disclosure Statement (Agreement) and Texas Deed of Trust (Deed)—did not include

---

[1] The Court sets out its findings and conclusions in narrative form. To the extent that any finding of fact is more appropriately considered a conclusion of law, or vice verse, then such findings or conclusions are deemed as such.

three terms required by the Texas Constitution: Article XVI, Section 50(a)(6)(J), (P), & (Q)(xi).[2] These omissions, he argued, make the lien invalid. The parties were unable to come to an agreement on this claim, and a bench trial commenced on December 12, 2016.

This parties do not dispute the relevant facts. The only evidence submitted was the Agreement and Deed. Farkas also testified to his method of searching for the allegedly missing terms.

The following are the relevant factual findings of the Court:

- The heading of the Agreement states "THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6) and (t), ARTICLE XVI OF THE TEXAS CONSTITUTION." (Dkt. No. 97, Exh. 2 at 1).

- Section 2 of the Deed provides that "This Agreement is intended to evidence an 'Extension of Credit' as that term is defined by Section 50(a)(6) and (t), Article XVI of the Texas Constitution. . . ." (Dkt. No. 97, Exh. 3 at 1).

- Section 29 of the Agreement states that "The Bank shall comply with any of its obligations under Sections 50(a)(6), 50(e)-(i), or 50(t) Article XVI, Texas Constitution . . . ." (Dkt. No. 97, Exh. 2 at 14).

---

[2] Section 50(a)(6)(J) requires that an extension of credit "may not be accelerated because of a decrease in the market value of the homestead or because of the owner's default under other indebtedness not secured by a prior valid encumbrance against the homestead."

Section 50(a)(6)(P) requires that the extension of credit be "made by one of the following that has not been found by a federal regulatory agency to have engaged in the practice of refusing to make loans because the applicants for the loans reside or the property proposed to secure the loans is located in a certain area: (i) a bank, savings and loan association, savings bank, or credit union doing business under the laws of this state or the United States . . . ."

Finally, Section 50(a)(6)(Q)(xi) requires the extension of credit be made on the condition that "the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the extension of credit is made by a person other than a person described under Paragraph (P) of this subdivision or if the lien was not created under a written agreement with the consent of each owner and each owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents."

## II. CONCLUSIONS OF LAW

Under Texas law, "[a] suit to clear or quiet title— also known as suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). This equitable action "exists to 'enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Hahn v. Love*, 321 S.W.3d 517, 521 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Thomson v. Locke*, 66 Tex. 383, 1 S.W. 112, 115 (1886)). The elements of a quiet-title claim are "(1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable." *Cruz v. CitiMortgage, Inc.*, No. 11–cv–2871, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied)). Neither party disputes that Farkas has established the first two elements. However, they disagree as to the invalidity of the lien.

Farkas argues that because the extension of credit fails to comply with Section 50(a)(6), Article XVI of the Texas Constitution, Wells Fargo's claim to the property is invalid or unenforceable. In 2003, the Texas Constitution was amended to provide additional protections to the homestead. In particular, Section 50(a)(6) provides that: "[t]he homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for . . . an extension of credit that" complies with this section. It includes a list of requirements that the lien must meet in order to be foreclosure eligible. Section 50(c) then provides that: "[n]o mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section . . . ." Under Section 50(c), a party may file suit for quiet title,

3

voiding the lien, when it fails to comply with the requirements listed in Section 50(a)(6). *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 548-49 (Tex. 2016). Thus, not only may the lender lose the ability to foreclose on the lien if it does not comply with the Texas Constitution, but the owner may also quiet title to void the lien entirely. This right, in part, is limited by Section 50(a)(6)(Q)(x)-(xi), which gives the lender an opportunity to cure any defects within sixty days of notice by the owner of the property.

Farkas's sole argument in support of his claim for quiet title is that the terms of the lien failed to include three of the required provisions under Section 50(a)(6): (J), (P), and (Q)(xi). Wells Fargo contends that though these three provisions were not explicitly included[3] in the Agreement or Deed, Section 50(a)(6) was incorporated in its entirety by reference in two sections of the Agreement.[4] Under Texas law, "[a] written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution." *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011). Contracts that "can be given a certain or definite legal meaning or interpretation" will be construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A term in

---

[3] There is an argument—that Wells Fargo fails to make—that the three terms *were* specifically included in the Agreement. *See* Dkt. No. 97, Exh. 3 at 1 (defining Lender as a "National Bank organized under the laws of the United States" as required by Section 50(a)(6)(P)); Dkt. No. 97, Exh. 2 at 9 (providing the bases for default, none of which are the prohibited bases in Section 50(a)(6)(J)); *id.* at 14 (providing for forfeiture of all principal and interest for all obligations under Section 50(a)(6), as required by Section 50(a)(6)(Q)(xi) unless the bank cures through one of the provisions of (Q)(x)). However, Wells Fargo makes none of these arguments, and therefore this will not be the basis of this decision.

[4] Wells Fargo originally argued that the constitutional provisions must be *violated* before a suit for quiet title may be brought. *See* Tr.26–27. However, this argument was dropped in the briefing, so this Court need not decide this issue.

the contract "is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.*

Texas contract law provides that "an unsigned paper may be incorporated by reference" in a signed document. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004). The language used to refer to the incorporated document "is not important provided the document signed . . . plainly refers to another writing." *Id.* (quoting *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)). This incorporated document becomes part of the contract, and "both instruments must be read and construed together." *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas, 2013, no pet.). Texas courts have interpreted the "plainly refers" requirement as meaning "clearly refers" and have held that a "mere reference" to another document is not enough to establish a wholesale incorporation of the referenced document "when the facts and circumstances surrounding the agreement do not indicate that incorporation was intended." *Al Rushaid v. Nat'l Oilwell Varco, Inc.,* 757 F.3d 416, 420 (5th Cir. 2014). When the reference to another document "is clear and the circumstances indicate that the intent of the parties was incorporation, [Texas] courts have held that a document may be incorporated, even in the absence of specific language of incorporation." *Id.* at 420; *cf. Gray & Co. Realtors, Inc. v. Atlantic Hous. Found., Inc.*, 228 S.W.3d 431, 436 (Tex. App.—Dallas 2007, no pet. h.) ("[A]ll that is required is that the incorporated document be referenced by name."). However, "[t]he absence of such a reference within the signed document 'shows that the parties did not intend to contract with reference to the other instrument.'" *Trico Marine Servs., Inc. v. Stewart & Stevenson Tech. Servs., Inc.,* 73 S.W.3d 545, 549 (Tex.App.—Houston [1st Dist.] 2002, orig. proceeding).

The Court finds the language of the Agreement and Deed of Trust incorporate the terms of Texas Constitution Article XVI, Section 50(a)(6). Here, the Court is not working on an empty slate in this determination. Previously, Judge Mark Lane recommended denial of Farkas's motion to dismiss on a similar issue. Dkt. No. 58. In the motion, Farkas had argued that Wells Fargo could not foreclose on his property because in the terms of the Agreement, he was unable to find the three specific provisions listed above. Judge Lane dismissed this argument, noting that Section 50(a)(6) had been incorporated by reference in Section 29 of the Agreement, and thus not all terms needed to be explicitly referenced for the lien to be valid. *Id.* at 4-5. In particular, Judge Lane compared the language of Section 50(a)(6) with the mandatory notice required by Section 50(g). *Id.* at 5 n.1. Section 50(g) requires the *exact language* of that section to be sent in a notice to the homeowner. This is in contrast with the general requirement to comply under Section 50(a)(6). Moreover, the fact that the lender is required to send out a notice that specifically delineates the requirements of Section 50(a)(6) is further proof that not every provision will be explicitly referenced in the lien documents. Rather, it was expected that some of the provisions could be incorporated by reference.

Farkas's counterclaim is not identical to his argument from the motion to dismiss. Here, Farkas attempts to quiet title to the property for a void lien under Section 50(c) rather than using the alleged defects as a defense to foreclosure. However, the result is the same. As noted above, for a lien to be foreclosure eligible, it must strictly comply with the terms of Section 50(a)(6); Section 50(c) states that a lien is void if it does not comply with Section 50(a)(6). Farkas's argument here is that the lien is void for the same reasons as it was not foreclosure eligible, namely that the lien documents failed to include three of the required provisions. Judge Lane's finding that the terms were incorporated would thus apply equally to both arguments.

The Agreement and Deed reference the entirety of Article 50(a)(6) in at least two sections.[5] First, Section 2 of the Agreement incorporates Section 50(a)(6). There, the Agreement provides that this is an "Extension of Credit as that term is defined by Section 50(a)(6) and 50(t), Article XVI of the Texas Constitution." This evidences a clear intent to incorporate Section 50(a)(6). By defining "Extension of Credit" under the terms of Section 50(a)(6), the Agreement references the requirements of that Section as being the terms by which the Agreement is made. Section 50(a)(6) does not define an extension of credit, but rather provides that a valid lien complies with the provisions of that section. Thus, defining "Extension of Credit" as provided in Section 50(a)(6) incorporates the entirety of that provision. Moreover, this section provides clear notice that the provisions are to be applied through the document wherever "Extension of Credit" is mentioned and clearly indicates an intent to be bound.

Farkas argues that this wording is required by Section 50(a)(6)(Q)(vi), and therefore cannot be used as evidence of an intent to incorporate the provisions. The fact that (Q)(vi) requires lien agreements to provide this notice does not disqualify this statement from also incorporating the terms of the constitutional provision. Moreover, (Q)(vi) states that the lien documents must "contain a

---

[5] Additionally, the Agreement references "Equity Law." This term, though capitalized so as to indicate that it is a term of art in the contract, was left undefined. However, the context suggests that it was intended to reference Section 50(a)(6). In both Section 28 of the Agreement and Section 5 of the Acknowledgment of Fair Value, the parties are required to comply with "Equity Law" to secure a "valid lien" or a "valid Extension of Credit." Moreover, "Extension of Credit" is defined by the terms of Section 50(a)(6). Equity Law is also conditioned on the forfeiture provisions of 50(a)(6)(Q)(x)-(xi), and allows for cure under the same. In the same vein, Wells Fargo requires the owner to provide notice under Section 50(a)(6)(Q)(x) with the title "Texas Home Equity Lending Laws." While the context provided in this note might indicate that the parties intended "Equity Law" to incorporate Section 50(a)(6), the term is ambiguous, and neither party briefed this. The undersigned only mentions this as additional support in finding that the parties intended to incorporate Section 50(a)(6) into the Agreement.

7

disclosure that the extension of credit is the type of credit defined by Section 50(a)(6)." This disclosure is provided in clear terms in the header, which states: "THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6)." This complies with the constitutional provision.

Even were Section 2 to only provide the disclosure required by Section 50(a)(6)(Q)(vi), Section 29 of the Agreement incorporates Section 50(a)(6). This section provides that the "Bank shall comply with any of its obligations under sections 50(a)(6), 50(e)-(i), or 50(t)." Dkt. No. 58 at 4. This is more than a "mere reference" and indicates a clear intention to comply with the constitutional provision. Moreover, the conditions in the rest of the document do not refute this. None of the terms conflict, and in fact, many are specifically referenced. This points to a clear intention to abide by the Texas Constitution, and "plainly refers" to Section 50(a)(6).

Farkas contends that the wording "shall comply" does not evidence an intent to incorporate, but rather indicates an intent to create a future obligation. He argues that because the phrase goes on to state that the bank "shall comply . . . within sixty days" Section 29 merely incorporates the required forfeiture provision. While it is true that Wells Fargo does condition the lien on Section 50(a)(6)(Q)(x)—as required—this does not preclude incorporation of the entirety of Section 50(a)(6). Rather, the full phrase, "shall comply with any of its obligations" references Wells Fargo's intention to comply with all obligations created by the lien under Section 50(a)(6). Thus, this Section serves a dual purpose: acknowledging and incorporating its existing obligations under Section 50(a)(6) and giving notice of potential remedies. Section 29 of the Agreement acknowledges that the obligations under Section 50(a)(6) were created by entering into the Agreement, and then provides notice of the owner's remedies for Wells Fargo's failure to comply. This inclusion is sufficient to incorporate Section 50(a)(6) into the Agreement.

Finally, Farkas argues that because eighty percent of the provisions from Section 50(a)(6) were specifically included in the Agreement and Deed, the parties did not intend to incorporate the entirety of the constitutional provision. Farkas points out that reading either of the sections to incorporate the entire provision would render the other terms that *were* specifically included meaningless. This is untrue. First, Farkas provided no cases which state that providing some terms of the incorporated document, while not including others, would invalidate an otherwise clear incorporation of the entire provision. In fact, the prevalence of references to provisions of Section 50(a)(6) throughout the lien documents would support a finding that the parties intended to incorporate the entirety of the provision. Moreover, of the terms Farkas points to, nearly all were included in the Acknowledgment of Fair Market Value. The terms found in that part of the Agreement are certifications made by the owner that the parties have fulfilled the prerequisites needed to finalize the lien. Incorporation of the entirety of Section 50(a)(6) in either Section 2 or 29 of the Agreement would not render these terms meaningless; this acknowledgment would be required regardless of whether the terms were included elsewhere. Farkas's argument fails.

This Court finds that the lien is valid and enforceable, and that permitting Farkas to quiet title is inappropriate. The Court will therefore enter a take-nothing judgment in favor of Wells Fargo on this claim.

SIGNED this 28th day of April, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE